# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 3157 | DATE | 11/20/2003 |
| CASE TITLE | Ray vs. Citigroup Global | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  For the reasons set forth in the attached Memorandum Opinion and Order, defendants' motion to dismiss (9) is granted in part and denied in part. Plaintiffs' state law claims currently contained in Counts 1, 3, 4, and 5 are dismissed, with leave to file an amended complaint within ten days of this order. Defendants' motion is otherwise denied. Status hearing set to 12/2/03 at 9:30 a.m. for the purpose of setting a discovery schedule and trial date, and to discuss the possibility of settlement.

(11) ■ [For further detail see

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 26 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 17 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| OR | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHERWIN I. RAY, et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>CITIGROUP GLOBAL MARKETS, INC., )<br>CITIGROUP, INC., and )<br>JOHN HENRY SPATZ, )<br>)<br>Defendants. ) | Case No. 03 C 3157 |

**DOCKETED NOV 2 6 2003**

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs are a group of over 200 investors who purchased shares of SmartServ Online, Inc. (SSOL); they claim they were induced to purchase the stock and then dissuaded from selling it because of misrepresentations made by Citigroup Global Markets, Inc. (formerly known as Salomon Smith Barney, Inc.) and its top institutional broker, John Spatz. Plaintiffs have filed suit against Citigroup Global Markets, its parent Citigroup Inc., and Spatz for violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§78j(b) and 78t(a). Plaintiffs have also asserted state common law claims of civil conspiracy, negligent misrepresentation, and negligent supervision. Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b). For the reasons stated below, the Court grants defendants' motion in part and denies it in part.

**Facts**

The plaintiffs in this case are all investors who purchased SSOL stock between approximately January 2000 and May 2002. Citigroup Global Markets, Inc. is a global financial services firm that provides investment and asset management services to its clients. It is the second largest retail brokerage firm in the country and a wholly-owned subsidiary of defendant Citigroup, Inc. John Spatz is an institutional stockbroker employed by Citigroup Global Markets. For the sake of convenience, we will refer to both Citigroup entities as "Citigroup."

Plaintiffs allege that Citigroup and Spatz, in combination with insiders at SSOL, a fund manager at Morgan Stanley and others, engaged in a pattern of fraud designed to induce the plaintiffs to purchase shares of SSOL stock and hold them. Plaintiffs claim that Spatz actively solicited retail stockbrokers to recommend SSOL to their customers. They allege that Spatz used the retail public to fraudulently "prop up" and artificially inflate the price of SSOL stock by making a series of gross misrepresentations to induce the purchase and holding of the stock. Among these alleged misrepresentations were statements concerning "major deals" that SSOL supposedly had completed with various "industry giants," statements that Citigroup thought very highly of SSOL and was going to invest substantially in the stock, and statements regarding the amount and sources of financing that SSOL had obtained. Plaintiffs claim that these statements were knowingly false when they were made. They further allege that these statements caused them to purchase and retain shares of SSOL stock, and that but for Spatz's continued misrepresentations about SSOL, they would have sold their stock before its value dropped almost to zero and thus would have avoided the financial losses they have suffered.

Defendants have moved to dismiss plaintiff's claims under Rules 12(b)(6) and 9(b). For

2

the reasons stated below, the Court denies defendant's motion to dismiss in part and grants it in part.

## Discussion

Dismissal under Rule 12(b)(6) is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). In considering the motion, the court accepts as true all well pleaded facts alleged in the complaint and draws reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

Federal Rule of Civil Procedure 9(b) requires "all averments of fraud" to be "stated with particularity," although "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally." In a case involving alleged fraudulent misrepresentations, "[t]he rule requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994); *see also DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ("Although states of mind may be pleaded generally [under Rule 9(b)], the 'circumstances' must be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story."). In addition, the Private Securities Litigation Reform Act of 1995 (PSLRA), added to the Securities Exchange Act a requirement that the plaintiff's complaint "specify each statement alleged to have been misleading," and "the reason or reasons why the statement is

3

misleading." 15 U.S.C. § 78u-4(b)(1), as well as a requirement that as to each misstatement or omission, the complaint "state with particularity the facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* at § 78U-4 (b)(2).

Defendants argue that plaintiffs have failed to plead the circumstances of the alleged fraud with sufficient particularity and that they have not stated a claim of securities fraud because they have identified no actionable misrepresentations and have failed sufficiently to plead scienter. Defendants also argue that plaintiffs' state law claims are preempted by the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. §78bb(f)(1). The Court rejects defendants' arguments regarding plaintiffs' federal claims but agrees with defendants that plaintiffs' state law claims are preempted by the SLUSA, at least in their present form.

### A. Plaintiffs' federal claims

#### 1. Sufficiency of pleading of circumstances of fraud

Defendants argue that plaintiffs' complaint is defective because it fails to plead the circumstances of the alleged fraud with the level of particularity required by Federal Rule of Civil Procedure 9(b) and the PSLRA. Specifically, they argue that the complaint does not sufficiently identify the persons to whom the alleged misrepresentations were made, how they were communicated, and when they were made. The Court disagrees.

First, defendants assert that plaintiffs' complaint does not specifically identify to whom Spatz made a number of his alleged misrepresentations and in what manner he made them. First of all, it is readily apparent from the complaint that only three of the plaintiffs - Sherwin Ray, Douglas Metcalf, and Robert Metcalf - allege that Spatz spoke directly to them. *See, e.g.*, Cmpl.

4

¶22, 66. The lion's share of the remaining representations are claimed to have been made by Spatz to plaintiffs' agents, namely their brokers Howard Borenstein, Mel Stewart, and Angelo Armena. *See id.* ¶¶20, 21, 48. Defendants rely on *Sears v. Likens,* 912 F.2d 889 (7th Cir. 1990), for the proposition that this is insufficient under Rule 9(b). But in *Sears,* the complaint's primary flaw was that it lumped the *defendants* together and did not specify who was involved in what allegedly improper activity. *Id.* at 893. No such flaw is claimed in this case; all of the misrepresentations are attributed to Spatz. The complaint sufficiently identifies how and to whom Spatz is claimed to have made misrepresentations; Rule 9(b) does not require surgical precision.

Defendants also argue that the complaint fails sufficiently to identify when the alleged misrepresentations were made; they contend that in a number of instances, plaintiffs have identified only a range of dates, not specific dates. To support this argument, they rely on *Clark v. Robert W. Baird Co.,* 142 F. Supp. 2d 1065, 1072 (N.D. Ill. 2001), in which the court stated that "it is not enough to merely allege a period of months or years, or the duration of the activity." But that is not a fair characterization of plaintiffs' complaint. Most of the misrepresentations alleged by plaintiffs are tied down to specific dates or months. Nearly all of the others are adequately identified by context. The complaint includes a level of detail sufficient to satisfy the purpose of Rule 9(b): "to protect individuals and businesses from [the] privileged libel" that might arise if "loose charges of fraud" were permitted. *Kennedy v. Venrock Associates,* ___ F.3d ___, 2003 WL 22442997, at *8 (7th Cir. Oct. 29, 2003). To this end, the Rule "requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate."

5

*Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). Plaintiffs represent in their response to defendants' motion that they have done the best they can consistent with their memories of events that occurred, in some instances, as much as three years before the complaint was filed. The complaint's allegations regarding the who, how, and when of the fraud are sufficiently particularized to meet Rule 9(b)'s requirements; any additional detail can be obtained via the discovery process.

### 2. Legal sufficiency of plaintiffs' federal claims

Defendants argue that plaintiffs' securities fraud claims are premised upon alleged representations which are not actionable because they involved mere "puffery" or non-specific predictions of future prospects. The Court disagrees. Plaintiffs allege numerous misrepresentations in their complaint; many of them involve statements about past events or the then-current state of SSOL's business and finances, not predictions about the future. For example, plaintiffs allege that Spatz claimed that SSOL had signed contracts that would produce revenue in the millions of dollars, including one with Citicorp itself; that many of Citicorp's institutional clients had invested in SSOL; and that he had seen a Citigroup research report that justified his claim of a target price of $300 per share for SSOL's stock. Each of these statements, plaintiffs allege, was untrue. Plaintiffs also allege that at a later date, Spatz misrepresented that Morgan Stanley was not selling its investment in SSOL when in fact it had already done so, and that other sales of SSOL stock that were taking place were just "retail orders," when in fact he knew that SSOL insiders were selling their stock in the company through Citigroup.

These allegations by plaintiffs, which the Court must take as true at this stage of the

litigation, involve neither vague nor forward-looking misstatements nor puffery, and they are sufficient to give rise to liability for securities fraud. Taken together, these statements reflected that SSOL was a solid firm that had contracts in place to generate significant revenues, that research by experts supported Spatz's claimed investment value of the stock, that other knowledgeable investors were buying it too, and (later) that knowledgeable investors were holding, not selling, their SSOL stock. Plaintiffs allege that these and other similar misrepresentations led them to purchase and then hold SSOL stock, to their ultimate detriment. These representations regarding past and current events would be actionable even were the Court to accept defendants' arguments that forward-looking statements cannot be the basis for a claim of securities fraud. For this reason, the Court need not address those arguments and need not concern itself with the sufficiency of the other misrepresentations and omissions alleged by plaintiffs.

Defendants also argue that plaintiffs' complaint fails sufficiently to allege scienter, that is, that defendants acted with the intent to deceive, manipulate, or defraud, *see Ernst & Ernest & Hochfelder,* 425 U.S. 185, 193 (1976), or with reckless disregard for the truth in the sense that the danger of misleading buyers was actually known to the defendants or so obvious that the defendants must have been aware of it. *See Sundstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033, 1043-45 (7th Cir. 1977); *Caremark, Inc. v. Coram Healthcare Corp.,* 113 F.3d 645, 650 n.7 (7th Cir. 1997). As indicated earlier, the PSLRA requires that as to each misstatement or omission, the complaint must "state with particularity the facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2). The Seventh Circuit has yet to address just how rigorous this pleading standard is. Cases in the Northern

7

District of Illinois, however, have generally followed the Second Circuit's pleading standard, which requires plaintiffs to allege facts either (1) showing that defendant had a motive and opportunity to commit fraud; or (2) that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *See, e.g., Rehm v. Eagle Finance Corp.*, 954 F. Supp 1246, 1253 (N.D. Ill. 1997); *Danis v. USN Communications, Inc.*, 73 F. Supp. 2d 923, 937 (N.D. Ill. 1999); *Abbell Credit Corp. v. Bank of America Corp.*, No. 01 C 2227, 2002 WL 335320, at *4 (N.D. Ill. March 1, 2002).

Plaintiffs contend that Spatz was motivated to make the alleged misrepresentations to "earn business for Citigroup and advance his own self-interest." Cmpl., p. 8. But a bare general allegation along these lines is insufficient; this Court agrees with several others that have held that such general allegations, without more, simply describe the commonly-held goals of most corporate executives. *See, e.g., Chu v. Sabratek Corp.*, 100 F. Supp. 2d 827, 841 (N.D. Ill. 2000) (citing cases). Without an allegation of a more concrete personal benefit, *see, e.g., Novak v. Kasaks,* 216 F.3d 300, 311 (2d Cir. 2000); *Sakhrani v. Brightpoint, Inc.*, No. IP99-0870-C, 2001 WL 395752, at *13 (S.D. Ind. Mar. 29, 2001), this does not satisfy the PSLRA's standard for alleging scienter.

On the other hand, factual allegations that the defendant engaged in deliberately illegal behavior, knew facts or had access to information indicating that his statements were inaccurate, or failed to check information he had a duty to monitor are sufficient to satisfy the PSLRA. *Novak,* 216 F.3d at 311. Plaintiffs have made allegations sufficient to meet this requirement as to the representations that the Court previously cited. Specifically, plaintiffs allege that based on his close contacts with SSOL management and his knowledge of Citicorp's own dealings with

8

SSOL, Spatz knew that his claims regarding SSOL's contractual arrangements, including the supposed deal with Citicorp, were untrue and that in fact SSOL did not have significant revenue from multiple sources as he had claimed. *See* Cmpl. ¶¶54, 84, 120, 121. Plaintiffs also allege that Spatz knew via his own clients and from his inside knowledge of Citicorp's dealings that his claims that a number of the firm's institutional clients had made significant investments in SSOL were untrue; actually only one such client, a Morgan Stanley fund, had purchased SSOL stock. *See id.* ¶¶54, 111. Plaintiffs allege that Spatz, as a major Citigroup institutional broker, knew there was no Citigroup research report that touted SSOL stock, let alone one that supported his claim of a target price of $300 per share. *See id.* ¶¶71, 111. And they also allege that based on his own dealings with the Morgan Stanley fund manager, Spatz knew when he represented that Morgan Stanley was not selling its SSOL stock that it had already done so (some of it through Citigroup itself), *see id.* ¶152; and that Spatz also knew his statement that sales of SSOL stock that were taking place were ordinary "retail orders" was untrue, as key SSOL insiders were unloading their holdings through Citigroup. *See id.* ¶144. These allegations are sufficient to satisfy the PSLRA's requirements for pleading scienter.

For these reasons, the Court denies defendants' motion to dismiss plaintiffs' federal claims.

**B.      Plaintiffs' state law claims**

Defendants next argue that the SLUSA bars plaintiffs' state law claims of common law fraud (which is included in Count 1 along with plaintiffs' §10(b) claim), conspiracy (Count 3), negligent misrepresentation (Count 4), and negligent supervision (Count 5). Under the SLUSA,

9

no "covered class action" based on state law alleging misrepresentations, omissions, or the use of deception in connection with the purchase or sale of a security may be maintained by a private party in federal or state court. 15 U.S.C. §78bb(f)(1). A "covered class action" includes any lawsuit in which damages are sought on behalf of more than fifty persons, which is the case here. *Id.* §78bb(f)(5)(B)(i)(I).

Plaintiffs argue that the SLUSA does not bar their claims for fraud, conspiracy, and negligent misrepresentation, at least to the extent they are premised on allegations of post-sale fraud that caused them to hold and not sell their SSOL stock. They argue that the SLUSA's use of the phrase "in connection with the purchase or sale of a security" was intended to adopt the Supreme Court's construction of that same phrase in §10(b) in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723 (1975), which limited §10(b) to claims that the plaintiff was induced actually to buy or sell stock by misrepresentations or omissions. Plaintiffs argue that a claim of fraudulent inducement *not* to sell is not a claim of misrepresentation in connection with a purchase or sale and thus is not barred by the SLUSA.

In their complaint, however, plaintiffs allege a unitary scheme of fraud which began before they purchased and continued afterward. This Court agrees with those courts that have held that "when a claim that sweeps within its ambit actual purchases or sales of stock *is* covered by SLUSA, a plaintiff may not avoid SLUSA's restrictions simply by alleging that a given misrepresentation caused him *both* to purchase and hold a particular security." *Riley v. Merrill Lynch, Pierce, Fenner & Smith,* 292 F.3d 1334, 1345 (11th Cir. 2003) (emphasis in original). *See also, e.g., Zoren v. Genesis Energy, L.P.,* 195 F. Supp. 2d 598, 605-06 (D. Del. 2002) (claim alleging "unitary scheme of fraud" beginning before public offering and continuing thereafter is

10

barred by SLUSA); *Hardy v. Merrill Lynch, Pierce, Fenner & Smith*, 189 F. Supp. 2d 14, 18-19 (S.D.N.Y. 2001) (claim that included both those who purchased prior to alleged misrepresentations and did not sell thereafter and those who purchased in reliance on misrepresentations was within scope of SLUSA). As the Eleventh Circuit explained in *Riley*, the fact that plaintiffs purchased and then retained their stock "does not necessarily add anything to the basic claim of purchasing, because all investors, by definition, hold their shares for at least some time after purchase." *Riley*, 292 F.3d at 1345.[1]

For these reasons, plaintiffs' state law claims of fraud, conspiracy, and negligent misrepresentation cannot be maintained in their present form and are therefore dismissed. This ruling, however, does not preclude plaintiffs from recasting these state law claims exclusively by reference to the post-purchase misrepresentations or omissions that they claim induced them not to sell. *Riley*, upon which we have relied in dismissing the state law claims in their current form, indicates that a state law claim along such lines is viable. *See Riley*, 292 F.3d at 1345 ("SLUSA does *not* apply to claims dealing *solely* with the retention of securities, rather than with purchase or sale.") (emphasis in original). *Accord, e.g., Gutierrez v. Deloitte & Touche, L.L.P.*, 147 F. Supp. 2d 584, 592 (W.D. Tex. 2001); *Gordon v. Buntrock*, No. 00 C 303, 2000 WL 556763, at *3-4 (N.D. Ill. Apr. 28, 2000).

The same ruling applies to plaintiffs' claim that the corporate defendants negligently supervised Spatz. Plaintiffs argue that the SLUSA does not apply to this claim because it does

---

[1] Plaintiffs' reliance on *J.E. Liss & Co. v. Levin*, 201 F.3d 848, 849-52 (7th Cir. 2000), is misplaced; the case addresses when a claim under §10(b) accrues, which is not the point at issue in this case.

11

not involve a theory of misrepresentations or omissions and thus is not a securities fraud claim. The Court disagrees. In this regard, we agree with the Eighth Circuit's decision in *Professional Mgmt. Assoc. Inc. Employees' Profit Sharing Plan v. KPMG LLP*, 335 F.3d 800 (8th Cir. 2003) (*"PMA"*), in which the court rejected this very argument. In *PMA*, the court held that because the plaintiff's allegations of misrepresentations and omissions were incorporated by reference into the claim of negligent supervision, the claim amounted to a securities fraud claim. *Id.* at 803. Like the plaintiffs in *PMA*, plaintiffs in this case have incorporated all of their allegations of misrepresentation and omission into their negligent supervision claim. *See* Cmpl. ¶¶ 192, 204. These claims are therefore barred by SLUSA to the same extent as plaintiffs' other state law claims.

## Conclusion

For the reasons stated above, defendants' motion to dismiss [docket #9] is granted in part and denied in part. Plaintiffs' state law claims currently contained in Counts 1, 3, 4, and 5 are dismissed, with leave to file an amended complaint within ten days of this order. Defendants' motion is otherwise denied. The case is set for a status hearing on December 2, 2003 at 9:30 a.m. for the purpose of setting a discovery schedule and a trial date, and to discuss the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 20, 2003

12