IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHERWIN I. RAY, et al.,                                ) | |
|                            Plaintiffs,                                ) | |
|      v.                                                                      ) | Case No. 03 C 3157 |
| CITIGROUP GLOBAL MARKETS, INC.,    ) <br> CITIGROUP, INC., and                                 ) <br> JOHN HENRY SPATZ,                              ) | |
|                          Defendants.                                ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

      The plaintiffs in this case lost millions of dollars after their shares of SmartServ Online, Inc. (SSOL), lost ninety-eight percent of their value between January 2000 and June 2002. They claim that a prominent investment advisor, John Spatz, fraudulently induced them to invest in SSOL, causing them significant losses. The Plaintiffs have sued Spatz, his employer, Citigroup Global Markets, Inc., and its parent company, Citigroup, Inc. (collectively, Citigroup), under sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a). Plaintiffs have also asserted a state law claim of negligent supervision. Defendants have moved for summary judgment. For the following reasons, the Court grants the motion.

**Facts**

      The plaintiffs are 155 individuals who purchased SSOL's publicly traded stock between January 2000 and May 2002. Citigroup is a global financial services firm that provides investment and asset management services. John Spatz is an institutional stockbroker employed

by Citigroup. Howard Borenstein, Mel Stewart, and Angelo Armenta are retail stockbrokers (collectively, "the brokers"), who claim that they relied on Spatz's fraudulent misstatements when they advised the plaintiffs to buy SSOL stock.

Plaintiffs allege that Citigroup and Spatz, in collaboration with insiders at SSOL, fraudulently induced the plaintiffs to purchase shares of SSOL stock by making a number of misrepresentations to the brokers. Among other things, Spatz allegedly told the brokers that SSOL had signed substantial contracts with large corporations including Microsoft, Smith Barney, and Verizon Wireless; that institutional investors at Citigroup thought highly of SSOL and were going to invest substantially in the stock; and that SSOL had obtained large sources of financing. Plaintiffs claim that Spatz knew these statements were false when he made them and used the retail public to artificially inflate the price of SSOL stock. They further allege that if they had known the truth behind Spatz's misrepresentations, they would have sold their stock before its value dropped and avoided the losses they suffered.

The brokers first met Spatz and began consulting with him in June 2000. At that time, SSOL's stock was priced at more than eighty dollars per share. Two years later, the stock barely exceeded one dollar. The stock prices of SSOL's competitors suffered a similar fate during the same time period: 724 Solutions lost 98.9% of its value; Aether Systems lost 98.39% of its value; and Openwave Systems lost 94.35% of its value.

**Discussion**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P.

56(c). The Court must view the facts in favor of the plaintiffs and draw all reasonable inferences in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**1.      Federal securities law claims**

The Securities Exchange Act of 1934 makes it unlawful for any person to

> use or employ, in connection with the purchase or sale of any security registered on a national securities exchange... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78(j)(b). Securities and Exchange Commission Rule 10b-5 prohibits the making of any "untrue statement of material fact" in connection with the sale of securities. 17 C.F.R. § 240.10b-5. Implied by this statute and implementing regulation is a private cause of action, which closely resembles a common law action for fraud. *Dura Pharms. v. Broudo*, — U.S. —, 125 S.Ct. 1627, 1631 (2005). To prevail on such a claim, a plaintiff must demonstrate that the defendant made a material misrepresentation or omission with scienter in connection with the purchase or sale of securities, that the plaintiff reasonably relied on the misrepresentation, and that the plaintiff suffered economic loss which was caused by the misrepresentation. *Id.* In addition, a plaintiff may recover from an individual or entity, including a brokerage firm, if the plaintiff demonstrates that the firm "directly or indirectly" controlled a person liable for securities fraud and the firm did not act in good faith. 15 U.S.C. § 78t(a); *Harrison v. Dean Witter Reynolds*, 79 F.3d 609, 614-15 (7th Cir. 1996).

The plaintiffs argue that based on the evidence they have offered, a jury reasonably could find that Spatz committed securities fraud and that Citigroup is jointly and severally liable as a controlling entity. The defendants, on the other hand, insist that no jury reasonably could find

3

that Spatz's alleged misrepresentations caused plaintiffs' losses, because the entire technology industry – of which SSOL was a part – suffered an economic collapse during the relevant time period, meaning the plaintiffs would have lost their investment irrespective of Spatz's alleged misrepresentations. The defendants also make other arguments, but we need not address them, because this one is dispositive of the federal claims.

Loss causation is a required element of a 10b-5 action and is similar to the proximate cause element in a common law fraud action. *See Dura Pharms*., 125 S.Ct. at 1632. To present evidence of loss causation, "it [i]s not sufficient for an investor to allege only that it would not have invested but for the fraud. Such an assertion alleges transaction causation, but it does not allege loss causation. Rather, it is also necessary to allege that, 'but for the circumstances that the fraud concealed, the investment . . . would not have lost its value.'" *Caremark, Inc. v. Coram Healthcare Corp.* 113 F.3d 645, 648-49 (7th Cir. 1997) (quoting *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 683 (7th Cir. 1990)) (citation omitted). In other words, transaction causation is proof that a knowledgeable investor would not have made the investment in question; loss causation is proof that a particular misrepresentation had a causal connection with the loss in value of the plaintiff's investment.[1] *See id.*

In *Bastian*, the plaintiffs were investors in oil and gas limited partnerships who sued the

---

[1] Plaintiffs cite two Second Circuit decisions to support the proposition that they can establish loss causation by presenting evidence that they would not have invested in SSOL absent Spatz's misrepresentations. *See AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202 (2d Cir. 2000); *Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705 (2d Cir. 1980). Aside from the fact that these decisions do not appear to represent the law in this circuit, the Second Circuit has recently reaffirmed the distinction between transaction causation (why the plaintiff bought or sold) and loss causation (whether the misrepresentation is a legally cognizable cause of the plaintiff's loss) and as such has called into doubt the vitality of *AUSA*. *Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 173-74 (2d Cir. 2005).

promoters of the partnerships after their investments lost money. *Bastian,* 892 F.2d at 682. The district court granted the defendants' motion to dismiss because the plaintiffs failed to allege loss causation, and the plaintiffs appealed. *Id.* The Seventh Circuit upheld the district court's order agreeing that the plaintiffs failed to allege "*why* the[ir] investment was wiped out." *Id.* at 684 (emphasis in original). The court said that gas and oil prices steadily declined during the time period in question, suggesting that the plaintiffs' loss was caused not by the defendants' misrepresentations but by independent market forces. *Id.* ("If the plaintiffs would have lost their investment regardless of the fraud, any award of damages would be a windfall.").

The Seventh Circuit has repeatedly reaffirmed *Bastian*'s holding that a plaintiff may not recover for securities fraud without offering evidence that his or her losses are attributable to the defendant's fraud and not market forces. *Law v. Medco Research, Inc.*, 113 F.3d 781, 786-87 (7th Cir. 1997); *Ryan v. Wersi Elec. GmbH & Co.*, 59 F.3d 52, 54 (7th Cir. 1995). In *Law*, the plaintiffs sued the defendant drug company for securities fraud. *Law*, 113 F.3d at 784. The defendant urged the court to affirm a lower court's grant of summary judgment contending that the plaintiffs failed to present evidence of loss causation. *Id.* at 786. The defendant offered the opinion of a financial expert who compared the price movements of the defendant's stock with that of other competing companies and concluded that market forces – and not any allegedly fraudulent statements – caused the plaintiffs' losses. *Id.* The court held that summary judgment was proper because the plaintiffs did not contest the expert's conclusions. *Id.* at 787.

In *Ryan*, the plaintiffs sued the defendants under the Illinois Consumer Fraud Act for making fraudulent statements that caused the plaintiffs to purchase the defendants' company. *Ryan*, 59 F.3d at 52. Though the court recognized that the plaintiffs presented evidence that the

5

defendants made misrepresentations, the court held, citing *Bastian*, that summary judgment was proper because the plaintiff did not demonstrate that the misrepresentations had anything to do with the company's failure. *Id.* at 54 ("Ryan fails to show that his business losses were caused by [the misrepresentations] as opposed to a general downturn in the market . . . or simple cash flow mismanagement ").

In this case, the plaintiffs must offer evidence from which a jury reasonably could find that they would have lost less money had SSOL's condition been as Spatz represented. *Bastian*, 892 F.2d at 685-86. The plaintiffs argue that some of their losses must have been caused by the misrepresentations, because if they had invested in Aether Systems instead of SSOL, they would have lost thirteen million dollars instead of sixteen million dollars. This is not evidence of loss causation. There are any number of reasons why Aether Systems fared slightly better than SSOL during the collapse of the technology market in the early part of the present decade, and though it is theoretically possible that SSOL's inability to secure particular contracts had something to with this difference in outcome, theoretical possibilities are insufficient to withstand a defendant's motion for summary judgment. Before they can rely on Aether Systems' marginally better performance, plaintiffs must put forth evidence – through expert opinion or otherwise – from which a jury reasonably could find that SSOL's poorer performance is attributable in some way to the subject matter involved in Spatz's misrepresentations. Plaintiffs have offered no such evidence.

The plaintiffs also allege in their brief – without a single citation to the voluminous record – that Spatz caused the plaintiffs to buy SSOL stock at an inflated price and that "[w]hen the truth about SSOL became known in late May 2002, SSOL began to collapse like the house of

cards that it was." Pl. Resp. at 18. If this allegation were supported by evidence, it might allow a jury reasonably to infer loss causation. *See Dura Pharms. Inc.*, 125 S.Ct. at 1635 (stating that a plaintiff can establish loss causation by presenting evidence that a defendant's fraudulent statements artificially inflated a stock price and that the stock price dropped once the fraud was revealed to the public).

In fact, however, the allegation misstates the record. The plaintiffs maintain that they discovered Spatz's alleged fraud in late May 2002 and that the stock price collapsed almost immediately. The evidence reflects, however, that by late May 2002 the price of SSOL stock had already collapsed. The stock price had settled to just over two dollars per share, which was down from sixty-five dollars per share in June 2000, when the plaintiffs began purchasing SSOL stock based on Spatz's recommendations. Moreover, even if SSOL's stock price dropped slightly after the plaintiffs learned the truth about Spatz's fraudulent statements, the plaintiffs have not presented evidence from which a jury could determine when or how the fraudulent statements came to light or what particular drop in price can be attributed to the revelation. Consequently, no jury reasonably could find that a drop in stock price between late May 2002 and June 2002 was proximately caused by disclosure of the truth.

The Court next considers an exception to the ordinary rule of loss causation, which allows a plaintiff to demonstrate loss causation by offering evidence that the defendant fraudulently represented an investment as one involving low risk. *Bastian*, 892 F.2d at 685-85. *Bastian*'s primary holding is that a plaintiff cannot recover for securities fraud by proving only transaction causation. The court attempted, however, to harmonize the decisions of other circuits by suggesting an additional method for proving loss causation:

7

> Suppose a broker gives false assurances to his customer that an investment is risk-free. In fact it is risky, the risk materializes, the investment is lost. Here there can be no presumption that but for the misrepresentation the customer would have made an equally risky investment. On the contrary, the fact that the broker assured the customer that the investment was free of risk suggests that the customer was looking for a safe investment. Liability in such a case (well illustrated by *Bruschi v. Brown, supra,* 876 F.2d at 1527) is therefore consistent with nonliability in a case such as the present.

*Id*. In *Bastian*, 892 F.2d at 686, the court concluded that the plaintiffs did not satisfy this exception, but other courts in this District have applied *Bastian*'s increased risk exception in favor of plaintiffs. *See Medline Inds., Inc. Employee Profit Sharing and Retirement Trust v. Blunt, Ellis & Loewi, Inc.*, No. 89 C 4851, 1993 WL 13436, *12 (N.D. Ill. Jan. 21, 1993); *Broderick v. Menconi*, No. 88 C 0161, 1990 WL 51180 (N.D. Ill. Apr. 12, 1990).

In this case, the plaintiffs assert in their brief that Spatz made representations that SSOL was a "sure fire guarantee." Pl. Revised Reply at 2. The record does not support this contention. Plaintiffs cite the affidavit of Francis Weber, a broker with Citigroup Global Markets, who testified not that Spatz said SSOL was a low risk stock, but that he said SSOL would obtain millions of dollars in revenue from contracts with large corporations. Weber Aff. ¶ 8. In any event, the relevance of Weber's testimony is questionable, because there is no claim that he advised any of the plaintiffs to buy SSOL stock based on this statement by Spatz. For these reasons, no jury reasonably could find, based on the evidence offered by plaintiffs, that Spatz's misrepresented the risk involved in purchasing SSOL stock.

Because the Court is granting summary judgment for defendants on plaintiffs' securities fraud claims, plaintiffs' motion for partial summary judgment requesting that Citigroup be deemed a control person under 15 U.S.C. § 78t(a) is effectively rendered moot.

8

**2. State law claims**

The plaintiffs' original complaint contained several state law claims alleging a fraudulent scheme involving the purchase and sale of stock. In an earlier decision, the Court dismissed those claims pursuant to the Securities Litigation Uniform Standards Act of 1998 (SLUSA), which prohibits a "covered class action" based on state law alleging misrepresentations, omissions, or the use of deception in connection with the purchase or sale of a security. 15 U.S.C. § 78bb(f)(1). In that decision we noted, citing *Riley v. Merrill Lynch, Pierce, Fenner & Smith*, 292 F.3d 1134, 1345 (11th Cir. 2003), that our ruling did not preclude the plaintiffs from recasting their claims by alleging that Spatz's misrepresentation caused them to retain – rather than purchase or sell – their SSOL stock. *Ray v. Citigroup, Inc.*, No. 03 C 3157, 2003 WL 22757761, *6 (N.D. Ill. Nov. 20, 2003). The plaintiffs amended their complaint accordingly. More recently, however, the Seventh Circuit held, contrary to *Riley* and our previous ruling, that the SLUSA prohibits not only state law claims alleging misrepresentation in connection with the purchase or sale of securities, but also claims alleging misrepresentation in connection with a plaintiff's retention of securities. *See Disher v. Citigroup Global Markets*, 419 F.3d 649, 654 (7th Cir. 2005); *Kircher v. Putnam Funds Trust*, 403 F.3d 478, 484 (7th Cir. 2005).

Recognizing the import of these decisions, plaintiffs now concede that most of their state law claims are precluded by the SLUSA. Pl. Resp. at 21. They contend, nonetheless, that their claim of negligent supervision may survive summary judgment because it "does not rely on deceit or manipulation as an element of the cause of action." *Id.* This argument, however, has already been considered and rejected by the Third Circuit. *Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294, 300 (3d Cir. 2005). In *Rowinski*, the plaintiffs argued that their state law

9

breach of contract claim was not preempted by the SLUSA because a misrepresentation was not an essential legal element of their claim. *Id.* The court rejected the argument, reasoning that the SLUSA "preempts any covered class action 'alleging' a material misrepresentation or omission in connection with the purchase or sale of securities" and that "preemption does not turn on whether the allegations are characterized as facts or as essential legal elements of a claim, but rather on whether the SLUSA prerequisites are 'alleged' in one form or another." *Id.* (quoting 15 U.S.C. § 78bb(f)(1)); *see also Professional Mgmt. Ass'n, Inc., Employees' Profit Sharing Plan v. KPMG LLP*, 335 F.3d 800, 803 (8th Cir. 2003) (dismissing plaintiffs' negligence claim under the SLUSA because it contained allegations of misrepresentations).

We agree with the reasoning of the Third Circuit and conclude that a claim is not removed from the SLUSA's intended purview only because a misrepresentation is not a legal element of the state law claim. Instead, the determining factor is whether the complaint alleges that misrepresentations were made in connection with the purchase or sale of securities. *Id.* The negligent supervision claim in this case plainly includes such allegations. *See* Pl. Am. Compl. at 52 ("Citigroup breached its duties and failed to supervise and control Spatz's actions, misrepresentations, and misconduct."). Consequently, it is preempted by the SLUSA.

## Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment [docket no. 154]. All other pending motions are terminated [docket no. 158, 176]. The Clerk is directed to enter judgment in favor of the defendants.

/s/ Matthew F. Kennelly
MATTHEW F. KENNELLY
United States District Court

Date: October 18, 2005